ARKANSAS STATE BOARD OF OPTOMETRY *v.* KELLER.

4-9484                                                    239 S. W. 2d 14

Opinion delivered April 30, 1951.

Rehearing denied May 28, 1951.

*Carl Langston,* for appellant.

*Wood & Chesnutt, Richard Hobbs* and *Bailey & Warren,* for appellee.

HOLT, J.   Appellant, Arkansas State Board of Optometry, brought this suit against appellees, D. P. Keller and five named physicians, to enjoin them from violating Act 94 of the General Assembly of 1941, a statute governing the practice of optometry.

From some time in 1932, D. P. Keller, a layman—whom it is conceded has never been licensed to practice optometry or medicine—was employed by the American Optical Company as its manager in Hot Springs, Arkansas.   During this time and up until February, 1950,

Keller personally handled the "dispensing service" in the preparation of patients' spectacles, which included the measurement of patients' pupilary distance, temple length, bridge size, lens size and shape, and after the spectacles were prepared in accordance with Keller's measurements, he would properly fit them to the patient's face.

Early in 1950, Keller resigned his position with American Optical Company and on February 16, 1950, he, together with the five appellees, physicians, entered into a written partnership agreement to engage in the wholesaling and retailing of optical supplies and filling prescriptions under the name of "The Medical Arts Optical Service." The partnership bought the property and equipment of American Optical Company in Hot Springs.

The complaint in the present suit (filed June 22, 1950) alleged, in effect, (appellant's brief) "that the partnership agreement was unlawful in that the doctors were aiding and assisting Keller, an unlicensed person, in the unlawful practice of optometry; that the partnership agreement between the doctors and Mr. Keller was contrary to law in that it authorized the partnership to practice optometry without a license; that Keller was himself unlawfully practicing optometry; and that the so-called credits, rebates, refunds, and commissions to the doctors were unlawful." The partnership agreement was made a part of appellant's complaint.

On appellees' motion and over appellant's objections and exceptions, certain parts of the complaint were stricken. Appellees answered with a general denial.

Upon a hearing "the court decreed that the defendant, Keller, prior to the filing of this suit, was dispensing glasses and spectacles in a manner which violated the optometry law of this State in that he actually made facial measurements and fitted the spectacles to the purchaser's face and eyes; immediately after the filing of this suit, and upon advice from counsel, Keller discontinued this practice, and since that time has fully com-

plied with the optometry statutes; there is no probability that he will in the future conduct his business in any manner other than consistent with the State law; that the doctors have not, in the past, nor at the time of the decree, conspired with Keller to assist him in the violation of the State law governing optometry; that the defendants, doctors, have not violated any of the laws of the State of Arkansas governing the practice of optometry in accepting the so-called kick-backs, rebates and credits in connection with the sale of spectacles or parts thereof."

Injunctive relief was denied and the complaint dismissed for want of equity. This appeal followed.

Appellant contends that Keller, an unlicensed person, has not ceased to practice optometry, that appellees, physicians, are aiding and abetting him, The Medical Arts Optical Service partnership is now assisting Keller in the unlawful practice of optometry and said physicians are receiving rebates or "kick-backs."

Appellant, in summary, says: "D. F. Keller, an unlicensed person was practicing optometry by dispensing and adapting the lens and frames to the patient's face both in the presence and in the absence of physicians. That he would make the frames comfortable for the patient and make them fit by bending the nose-piece; and after the glasses were in order, he would collect the retail price and later, rebate to the doctors."

After a review of the evidence, which we think it unnecessary to detail, we are unable to say that the Chancellor's findings are against the preponderance thereof.

Briefly, the evidence here shows that the examining oculist determines any deficiencies in the patient's vision, notes on a prescription the type and power of corrective lenses and facial measurements, for correct size of frames. The patient takes the prescription to the Medical Arts Optical Service, or any other optician of his choice, to be filled. When taken to Medical Arts,

Keller displays different styles of frames to the patient and where the physician or oculist has so requested, he, Keller, will check or verify the facial measurements, and should he discover what he conceives to be an error, he notifies the oculist who would, after rechecking, make any corrections he deemed necessary. This final decision always rested with the oculist or physician and not with Keller. After final instructions from the oculist, Keller has the lenses ground in accordance with the prescription, and affixes them to the correct style frame (as the customer may select). All that remains to be done after the actual delivery to the patient is to see if the glasses fit comfortably, which service Keller performs. In some cases, the bridge may pinch or the nose hook may need adjusting, in which event Keller, by bending the offending parts, makes it comfortable.

Act 94 (Ark. Stats. 1947, § 72-801, *et seq.*) provides that any person who "prescribes, dispenses, adapts, or duplicates lenses, . . . shall be deemed to be engaged in the practice of Optometry."

In construing this section of the act in *Dellinger* v. *Arkansas State Board of Optometry,* 214 Ark. 562, 217 S. W. 2d 338, we said: "It provides (§ 1) that any person who 'prescribes, dispenses, adapts, or duplicates' lenses for the correction, relief or aid of the eyesight shall be deemed to be engaged in the practice of optometry. As we interpret the statute, it was the legislative intention to divide the process of prescribing, making and fitting spectacles into three steps. First is the prescription, based upon an examination of the patient. Only physicians and optometrists are permitted to prescribe glasses. Second is the manufacture of the lenses. This is the normal work of an optician, for which no license is required. The third step is the dispensing and adapting of the glasses, being the adjustment of the lenses and frames to the patient's face. The testimony shows that technical skill is required in this part of the process and that inaccurate measurements may result in glasses that injure the vision. With an exception to be

mentioned, the Act provides that only physicians and optometrists may dispense and adapt lenses.''

We hold, as did the Chancellor, that the above simple acts which Keller was performing here did not amount to ''dispensing and adapting of the glasses'' and ''lenses'' within the meaning of the above section, or to a violation of the optometry law.

We also hold, as already indicated, that the Chancellor's finding that the five appellees, physicians, had not violated the Optometry law, nor any statute, in their partnership arrangement with Keller, was correct and not against the preponderance of the testimony.

Appellant earnestly contends, however, that appellees were violating § 70-307, Ark. Stats., 1947, referred to as the ''Unfair Practices Act'' and that the Chancellor erred in refusing to allow appellant to introduce testimony on this issue. We hold that there was no error here. Section 70-307 provides: ''The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is an unfair trade practice and any person, firm, partnership, corporation, or association resorting to such trade practice shall be deemed guilty of a misdemeanor and on conviction thereof shall be subject to the penalties set out in section 11 (§ 70-311) of this act, (Acts 1937, No. 253, § 7, p. 914; Pope's Dig., § 14317).''

The complaint does not allege that the rebates or ''kick-backs'' were ''not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor.'' In fact, the complaint, in effect, alleges the contrary. Appellant made the partnership agreement a part of its complaint and this agreement specifically provides that ''the partnership shall maintain an establishment list of wholesale prices, subject to change from time to time, and shall charge a standard dispens-

ing fee for filling prescriptions. Customers having prescriptions filled shall be charged a retail price to be established by agreement among the partners. The difference between the wholesale price plus dispensing fee and the retail price shall be credited to the oculist making the prescription. Such credit balance due oculists shall be paid by the partnership monthly. The privilege of participating in such retail profits shall be open to all licensed oculists and shall not be restricted to the partners.''

In construing the above statute, we said in the recent case of *Baratti* v. *Koser Gin Company,* 206 Ark. 813, 177 S. W. 2d 750: ''But the regulatory law . . . does not forbid all rebates nor does it make illegal all agreements for rebates. Before any agreement for a rebate can be said to violate the provisions of this act such rebate must: First, be secret; second, not be paid to all patrons upon like terms and conditions; and, third, must tend to destroy competition. It devolved upon appellee to show that all these requisites of illegality existed.''

We hold that appellant failed to state a cause of action against appellees on this issue of rebates or ''kickbacks,'' and therefore, as indicated, the Chancellor did not err in refusing to hear testimony on this point.

Finding no error, the decree is affirmed.

GRIFFIN SMITH, C.J., concurs.